No. 23-30486

# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘 𝖋𝖔𝖗 𝖙𝖍𝖊 𝕱𝖎𝖋𝖙𝖍 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

BOBBY STEVENSON,

PLAINTIFF – APPELLEE

V.

PAUL M. TOCE, IN HIS INDIVIDUAL CAPACITY; RANDY LAVESPERE, IN HIS
INDIVIDUAL CAPACITY,

DEFENDANTS – APPELLANTS

———————————————

On Appeal from the United States District Court for the
Middle District of Louisiana
3:22-CV-472

———————————————

## DEFENDANTS-APPELLANTS' OPENING BRIEF

———————————————

JEFF LANDRY
Louisiana Attorney General

*/s/ Dawn T. Mire*
DAWN T. MIRE (La. #21096)
Assistant Attorney General
Louisiana Department of Justice,
Litigation Division
1885 North Third Street, 4th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6300
Facsimile: (225) 326-6495
E-mail: MireD@ag.louisiana.gov
*Counsel for Defendants-Appellants*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Bobby Stevenson, *Pro Se*, Plaintiff-Appellee

Paul M. Toce, Defendant-Appellant

Randy Lavespere, Defendant-Appellant

Counsel for Defendants-Appellants:

Jeff Landry, Louisiana Attorney General

Dawn T. Mire,
Louisiana Department of Justice, Office of the Attorney General

*/s/ Dawn T. Mire*
Dawn T. Mire
*Counsel of record for Defendants-Appellants*

ii

## STATEMENT REGARDING ORAL ARGUMENT

The Defendants-Appellants do not believe that oral argument is likely to assist this Court as the legal issues presented regarding deliberate indifference and the qualified immunity of prison medial personnel are matters of well established law.  And the facts are easily ascertained from the record on appeal.  However, counsel for Defendants-Appellants will gladly present oral argument if this Court wishes to hear from the parties.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS..........................................ii

STATEMENT REGARDING ORAL ARGUMENT..................................iii

TABLE OF CONTENTS ..............................................................iv

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUES......................................................1

STATEMENT OF THE CASE .........................................................2

SUMMARY OF THE ARGUMENT ..................................................7

ARGUMENT ...............................................................................8

    I.    STANDARD OF REVIEW ................................................8

    II.   THE DISTRICT COURT ERRED IN FINDING A CLAIM FOR MEDICAL INDIFFERENCE AND DENYING QUALIFIED IMMUNITY. ..............................................................9

    III.  PLAINTIFF'S COMPLAINTS AS TO HIS DUTY STATUS DO NOT STATE A CONSTITUTIONAL CLAIM. ...........................20

    IV.  THE DISTRICT COURT ERRED IN ITS REVIEW OF THE ATTACHMENTS AND REFERENCES TO THE AMENDED COMPLAINT. ...........................................................21

    V.   THE DISTRICT COURT ERRED IN REFUSING TO CONSIDER THE DOCUMENTS ATTACHED TO THE MOTON TO DISMISS. .......26

CONCLUSION ..........................................................................34

CERTIFICATE OF SERVICE.........................................................36

CERTIFICATE OF COMPLIANCE ..................................................37

# TABLE OF AUTHORITIES

## Constitutional Provisions

Eighth Amendment ................................................................. 2, 10, 14, 20

## Statutes

28 U.S.C. § 1291 ...................................................................................... 1

42 U.S.C. § 1983 ...................................................................................... 2

## Rules

FRCP 10 ............................................................................................. 8, 22

FRCP 12 ............................................................................................. 1, 22

FRAP 32 ................................................................................................. 38

Fifth Circuit Local Rule 28.2.1 .............................................................. ii

Fifth Circuit Local Rule 32.3 ................................................................ 38

## Cases

*Alfred v. Texas Department of Criminal Justice*, 80 F.App'x 926
    (5th Cir. 2003) ................................................................................. 17

*Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 3039,
    97 L.Ed.2d 523 (1987) ..................................................................... 17

*Armant v. Stalder*, 287 F. App'x 351 (5th Cir. 2008) ............................. 4

*Backe v. LeBlanc,* 691 F.3d 645 (5th Cir. 2012) ...................................... 1

*Baldwin v. Dorsey*, 964 F.3d 320 (5th Cir. 2020), *cert. denied*,
    209 L. Ed. 2d 123, 141 S. Ct. 1379 (2021) ...................................... 17

*Barbe v. Ocwen Loan Servicing, LLC,* 383 F. Supp. 3d 634
  (E.D. La. 2019) ...................................................................... 27

*Brackens v. Stericycle, Inc.*, 829 F. App'x 17 (5th Cir. 2020) ................. 27

*Calhoun v. Hargrove,* 312 F.3d 730 (5th Cir. 2002) ............................... 22

*Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285
  (5th Cir. 2004) ...................................................................... 27

*Clark v. Adams*, 233 Fed. Appx. 400 (5th Cir. 2007) ............................ 13

*Clark v. Huntleigh Corp.*, 119 F. App'x 666 (5th Cir. 2005) ................... 22

*Cleveland v. Bell,* 938 F.3d 672 (5th Cir. 2019) .................................... 17

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496
  (5th Cir. 2000) ...................................................................... 27

*Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268 (5th Cir. 2020) ............. 8

*Corte v. Shaffer,* 24 F.3d 237 (5th Cir. 1994) ...................................... 19

*Cuellar v. Livingston,* 321 F.Appx. 373 (5th Cir. 2009) .......................... 19

*Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752
  (5th Cir. 2001) ...................................................................... 11

*Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333 (5th Cir. 2008) ............. 28

*Easter v. Powell,* 467 F.3d 459 (5th Cir. 2006) .................................... 11

*Estelle v. Gamble*, 429 U.S. 97 (1976) ............................................. 10, 19

*Farmer v. Brennan*, 511 U.S. 825 (1994) ............................................ 10

*Gobert v. Caldwell*, 463 F.3d 339 (5th Cir. 2006) ............................... 11, 16

*Gracia Ledezma v. United States*, 382 Fed. Appx. 381
   (5th Cir. 2010)......................................................................10

*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995)............................9

*Hare v. v. City of Corinth, MS*, 74 F.3d 633 (5th Cir. 1996)..................12

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982).................................9

*Howard v. King*, 707 F.2d 215 (5th Cir.1983)......................22, 23

*Irby v. Cole,* 278 F. App'x 315 (5th Cir. 2008).........................18

*Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759
   (5th Cir. 2019)...............................................................8, 27

*Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989).......................12

*Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985)....................11

*Kennedy v. Potter,* 344 F. App'x 987 (5th Cir. 2009)................18

*Maloney Gaming Mgmt., LLC v. St. Tammany Parish*,
   456 F. App'x. 336 (5th Cir. 2011).......................................27

*Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992)....................12

*McCormick v. Stalder*, 105 F.3d 1059 (5th Cir. 1997)............12

*Mendoza v. Lynaugh*, 989 F.2d 191 (5th Cir. 1993)...............11

*Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806,
   86 L.Ed.2d 411 (1985).........................................................1

*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011)..................8

*Morrison v. Gusman*, Civ. Action No. 10-217, 2010 WL 724173
   (E.D. La. Feb. 22, 2010) .................................................................... 18

*Neville v. American Republic Ins. Co.*, 912 F.2d 813
   (5th Cir. 1990) ........................................................................... 9, 22

*Norton v. Dimazana*, 122 F.3d 286 (5th Cir. 1997) ............................... 12

*Pearson v. Callahan*, 555 U.S. 223 (2009) ...................................... 9, 10

*Perniciaro v. Lea*, 901 F.3d 241 (5th Cir. 2018) ................................... 11

*Russell v. Gusman*, Civ. Action No. 10-1772, 2011 WL 2457925
   (E.D. La. June 17, 2011) .................................................................. 18

*Saucier v. Katz*, 533 U.S. 194 (2001) ..................................................... 9

*Stramaski v. Lawley*, 44 F.4th 318 (5th Cir. 2022) ................................. 8

*Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002) .............. 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,
   127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) .............................................. 28

*Thurston v. LeBlanc*, No. CV 19-365-BAJ-SDJ, 2020 WL 4228408
   (M.D. La. July 1, 2020), *report and recommendation adopted*,
   No. CV 19-00365-BAJ-SDJ, 2020 WL 4248385
   (M.D. La. July 23, 2020) .................................................................. 19

*Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir.1991) ............................... 10

*Watts v. Pourciau*, No. CV 20-196-SDD-RLB, 2020 WL 7344613
   (M.D. La. Nov. 16, 2020) ................................................................. 16

*Watts v. W. Baton Rouge Par. Det. Ctr.*, No. CV 20-196-SDD-RLB,
   2020 WL 7344702 (M.D. La. Dec. 14, 2020) ........................................ 16

*Williams v. Hargett*, 41 F.3d 663 (5th Cir. 1994) ............................... 9, 22

*Wilson v. Budney,* 976 F.2d 957 (5th Cir. 1992) ..................................... 21

*Winston v. Stacks,* 243 Fed.Appx. 805 (5th Cir. 2007) ........................... 21

# JURISDICTIONAL STATEMENT

The district court denied the Federal Rule Civil Procedure Rule 12(b)(6) motion to dismiss as to the qualified immunity of Dr. Paul Tocé and Dr. Randy Lavespere, based on the *Complaint* as amended. ROA.1332, 1364. Judgment was rendered on June 20, 2023. ROA.1364. A Notice of Appeal was filed on July 19, 2023. ROA.1397.

The denial of qualified immunity is immediately appealable. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Accordingly, under the collateral order doctrine, appellate courts have jurisdiction to review an interlocutory appeal of the district court's denial of qualified immunity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

# STATEMENT OF THE ISSUES

1. Whether the district court erred in concluding that Defendants were not entitled to qualified immunity.

1

2. Whether the district court erred in finding Plaintiff's complaints as to his duty status stated a constitutional violation.

3. Whether the district court erred in its review of the attachments and references incorporated into the Amended Complaint.

4. Whether the district court erred in refusing to consider documents attached to Defendants' Motion to Dismiss.

## STATEMENT OF THE CASE

Plaintiff-Appellee, Bobby Stevenson, was sentenced to the custody of the Louisiana Deparmtent of Public Safety and Corrections (DPSC) and housed at the Louisiana State Pententiary (LSP) at all times relevant to this lawsuit.  He filed suit under 42 U.S.C. § 1983 against Dr. Paul Tocé and Dr. Randy Lavespere, the defendants-appellants, and Jacob Johnson, who was dismissed by the district court.

Plaintiff filed a *Complaint* and an *Amended Complaint*, alleging Dr. Tocé and Dr. Lavespere acted with deliberate indifference to his medical needs in violation of the Eighth Amendment. ROA.6-21, 1271-89. Plaintiff originally suffered an injury to his right ankle while playing basketball, which required surgery and the placement of syndesmotic screws for surgical fixation of his right tibia and fibula. ROA.11-12, 1271-

2

72. Plaintiff claimed that because he had to work in the prison fields, the surgical screws broke causing him pain and swelling. ROA.11-12, 1273.

Plaintiff claimed that, on April 27, 2021, while being examined for a rash, he complained of "chronic swelling of this foot and legs" and requested his previous duty status. ROA.12, 15-16. He alleged that, during that examination, he learned for the first time that the screws in his ankle were broken. ROA.16.

He maintained that x-rays from May 2006 and March 2020 revealed the broken screws, but he was not informed they were broken until April 27, 2021, fifteen years after they broke. ROA.12, 1274, 1277, 1281 He also asserted that Dr. Tocé and Dr. Lavespere had previously examined him for complaints of pain and swelling and requests for a limited duty status with regard to this right ankle. ROA.16. Plaintiff alleged that both Dr. Tocé and Dr. Lavespere knew of the presence of the broken screws the entire time and did nothing to provide access to an orthopedic specialist to have the screws removed or repaired. ROA.16.

Plaintiff alleged that upon learning of the broken screws, he requested to be sent to an outside facility for the removal thereof because of the pain, swelling, and deterioration of his quality of life. ROA.12. He

also requested a limited duty status, which was denied. ROA.12. "A 'duty status' is a written designation assigned by a prison medical doctor indicating an inmate's physical or mental ability to perform hard labor in accordance with his sentence. Duty statuses are generally assigned by physicians following a medical evaluation, and they are subject to change depending on changes in the medical condition of a particular inmate. Duty statuses may range from no duty (indicating a need for bed rest), to light duty or regular duty with restrictions, and finally to regular duty without restrictions (indicating the inmate is capable of performing any and all hard labor)." *Armant v. Stalder*, 287 F. App'x 351, 352 n.1 (5th Cir. 2008)

On December 7, 2022, Defendants filed a *Motion to Dismiss* asserting qualified immunity. ROA.47-70. Defendants attached relevant medical records central to plaintiff's claims. ROA.71-120. Defendants also provided plaintiff with numerous documents pursuant to a *Notice of Compliance*.[1]  ROA.136-1164.  In response to the *Motion to Dismiss*, Plaintiff filed a document entitled *Motion to Amend and Consolidate and*

---

[1] The district court ordered Defendants to provide plaintiff all documents pertinent to the case, including the medical records. ROA.29-31.  Defendants complied and filed the voluminous documents at ROA.136-1164.

4

*Reply to Defendants' Motion to Dismiss*, attaching some of the medical records provided pursuant to the *Notice of Compliance*. ROA.1179-1263. Defendants filed a *Reply in Support of Motion to Dismiss*. ROA.1237-1247. Defendants also filed an *Opposition to the Motion to Amend and Consolidate*. ROA.1248-1265. The district court allowed the plaintiff to amend his *Complaint*. ROA.1270.

The *Amended Complaint* was filed in the record with the plaintiff's attachments. ROA.1271-1328. Plaintiff attached medical records to the *Amended Complaint,* and plaintiff referred to numerous medical records throughout the pleading. ROA.1271-1277, n.1-17; ROA 1279-1281, n.20-21; ROA 1243-1285, n. 24-27. He also attached a letter he wrote to Jacob Johnson, ROA.1292, and a letter from Dr. Tocé dated August 15, 2022 with attachments. ROA.1293-1328. Further referenced in plaintiff's *Amended Complaint* ROA.1276 n.16, is an August 25, 2021 Consultant Referral Form. ROA.90.

Plaintiff alleged in the *Amended Complaint* that "[s]ometime after the screws were found broken, [Plaintiff] was provided an ankle brace to stabilize." ROA.1274-1275, ¶ 19. He maintained that Dr. Lavespere has been involved in his medical care for well over a decade. ROA.1275, ¶ 20.

Plaintiff stated "[n]ot that absolutely no treatment has *ever* occurred, except what 'treatment' has been extended cannot repair, replace or remove the broken screws…." ROA.1275, ¶ 23.  Plaintiff alleged that he was placed on a low sodium diet and given medication. ROA.1275-1276, ¶ 25.  He further averred that he was provided a TED hose, that both of his legs were swelling, and that he had hypertension. ROA.1276, ¶ 26. He received an x-ray on September 8, 2021. ROA.1276-1277, ¶ 27, 34. Plaintff alleged that he was referred to an orthopedic doctor and was given a brace for stablization. ROA.1276-1277, ¶ 28, 32.  Plaintff alleged that Dr. Tocé responded to a letter addressed to Jacob Johnson explaining that a lace up brace and heel stretches were recommended, and not surgery. ROA.1277, ¶ 33 and ROA.1292, 1293.  Plaintiff admitted he saw an orthopedic specialist on March 21, 2022. ROA.1277,  1285, ¶ 34, 82.  Plaintiff referred to a medical record to allege that Dr. Tocé made a notation on September 10, 2021 that the September 8, 2021 x-ray report showed no changes from the March 8, 2020 x-ray report. ROA. 1281, ¶ 57.  Plaintiff asserts that Dr. Lavespere requested the x-ray in 2021 and that Dr. Tocé signed off on a report after reviewing it. ROA.1284, ¶ 75-76.

Despite these facts, the district court found that plaintiff had stated a claim for deliberate indifference and qualified immunity did not apply. ROA.1330-1338, Dr. Tocé and Dr. Lavespere objected to the Report and Recommendation issued by the Magistrate Judge. ROA.1343-57. The district court granted the motion to dismiss as to Jacob Johnson, but denied the motion as to Dr. Tocé and Dr. Lavespere. ROA.1332, 1364. Dr. Tocé and Dr. Lavespere appeal that judgment.

## SUMMARY OF THE ARGUMENT

Plaintiff's claims fail at both step one and step two of the qualified immunity test. Plaintiff has not alleged a constitutional violation committed by either Dr. Tocé or Dr. Lavespere. Plaintiff asserts nothing more than a disagreement with the medical care he has received, which does not rise to the level of a constitutional violation. Furthermore, he has not alleged a violation of clearly established law. Therefore, Dr. Tocé and Dr. Lavespere are entitled to qualified immunity.

Additionally, the district court should have reviewed plaintiff's attachments and references contained in his *Amended Complaint*, which became part of the pleadings. In failing to do so, the district court relied on plaintiff's inaccurate interpretation of those documents, which

7

contradict the claims of medical indifference.  Alternatively, the district court should have relied on the documents attached to the *Motion to Dismiss* filed by defendants.  However, even if the district court had reviewed only the attachments and references made by plaintiff in his *Amended Complaint*, defendants are entitled to qualified immunity in this matter.

## ARGUMENT

### I.    STANDARD OF REVIEW

A denial of qualified immunity is reviewed *de novo*.  *Stramaski v. Lawley*, 44 F.4th 318, 321 (5th Cir. 2022) (citing *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 273 (5th Cir. 2020); *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)).  When reviewing a denial of a motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (citation omitted). An attachment to a complaint is considered part of the complaint.  *See* Fed.R.Civ.P. 10(c); *Williams v. Hargett*, 41 F.3d 663

(5th Cir. 1994) (citing *Neville v. American Republic Ins. Co.*, 912 F.2d 813, 814 n. 1 (5th Cir. 1990)).

## II. THE DISTRICT COURT ERRED IN FINDING A CLAIM FOR MEDICAL INDIFFERENCE AND DENYING QUALIFIED IMMUNITY.

The qualified immunity defense is a familiar one, and operates to protect a public official who is performing a discretionary task. *Hale v. Townley*, 45 F.3d 914, 917 (5th Cir. 1995). Government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982). The Courts have traditionally used the two step method in determining whether a defendant is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the inmate, the defendant's conduct violated the inmate's constitutional rights. *Pearson*, 555 U.S. at 232. In the second step, a court must determine whether the

right allegedly violated was clearly established at the time of the infraction. *Id.*

## A. The District Court Erred in Finding the Plaintiff Sufficiently Alleged Deliberate Indifference in Violation the Eighth Amendment.

To prove an Eighth Amendment violation arising from his medical care, Plaintiff must show that the Defendants knew he had a serious medical need; showed deliberate indifference to the serious medical need; and that the deliberate indifference caused plaintiff's injury. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Negligence, neglect, unsuccessful treatment, or even medical malpractice, do not give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991). Disagreement with medical treatment is insufficient to state a claim of deliberate indifference. See *Varnado*, 920 F.2d at 321; *Gracia Ledezma v. United States*, 382 Fed. Appx. 381, 383 (5th Cir. 2010). Whether the plaintiff has received the

treatment or accommodation that he believes he should have is also not sufficient absent exceptional circumstances. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted). "[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment." *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation omitted. Rather, a plaintiff must show that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Perniciaro v. Lea*, 901 F.3d 241, 258 (5th Cir. 2018) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006), *citing Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

The Fifth Circuit has defined a "serious medical need" as a condition that is so obvious that even a layperson would recognize that medical care is required. *Gobert*, 463 F.3d at 345 n. 12. The Fifth Circuit has established that a showing of nothing more than negligence does not

11

constitute deliberate indifference. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997); *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

"Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). Even "gross negligence" does not meet the deliberate indifference standard. *Hare v. v. City of Corinth, MS*, 74 F.3d 633, 645 (5th Cir. 1996). "The treatment may not have been the best that money could buy, and occasionally, a dose of medication may have been forgotten, but these deficiencies were minimal, they do not show an unreasonable standard of care, and they fall far short of establishing deliberate indifference by the prison authorities." *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992).

In review of the *Complaint* and *Amended Complaint*, including the attachments and references, it is clear that neither Dr. Tocé nor Dr. Lavespere was deliberately indifferent to Plaintiff's medical needs. The essence of Plaintiff's claim is that the treatment received for his ankle was insufficient and that Dr. Tocé or Dr. Lavespere should have referred him to an orthopedic *surgeon* for corrective surgery. ROA.1275-82, ¶ 22. 30, 31, 34, 43, 46, 47, 48, 49, 50, 59, 64, and 71. However, plaintiff failed

to allege that Dr. Tocé or Dr. Lavespere were aware of any facts demonstrating a substantial risk of serious harm and disregarded the risk by failing to take reasonable measures to treat plaintiff.  See *Clark v. Adams*, 233 Fed. Appx. 400, 401 (5th Cir. 2007).  As shown by reference in plantiff's *Amended Complaint*, Dr. Lavespere referred the plaintiff to Dr. Sylvest, an orthopedist. ROA.1276, n. 16, ROA.90.  Furthermore, an attachment to plaintiff's *Amended Complaint* evidences the medical care plaintiff received for his complaint after referral to Dr. Sylvest. ROA.1293.

Plaintiff does not allege any specific action of Dr. Tocé that amounts to deliberate indifference.  The allegations specific to Dr. Lavespere are that his duty status changed and he referred Plaintiff for an x-ray. ROA.1275, ¶ 21, ROA.1284, ¶ 76.  As detailed above, Plaintiff received an extensive amount of treatment for swelling in both his legs and for his complaints of pain in his ankle.

Plaintiff's allegations are a disagreement with the medical treatment he has received or, at most, negligence on the part of Defendants in failing to refer plaintiff for surgery to remove the broken screws.  However, Plaintiff has not alleged medical indifference on the

13

part of Dr. Tocé or Dr. Lavespere.  Plaintiff alleged in his *Amended Complaint* that he was refused a referral to an orthopedic *surgeon*. ROA.1273, 1275.  He specifically stated, "Refusing to send [Plaintiff] for a _surgical evaluation by an orthopedic surgeon_ and instead 'prescribing' deliberately incorrect 'treatment' of symptoms is the main basis for this complaint." ROA.1275.  He also alleged that "Deliberately incorrect treatment for the broken screws could also form the basis for an Eight Amendment violation … The claims situates around the correctness of the car provided in light of the continuing presence of broken surgical screws which no longer serve a medical purpose and now cause harm by their continual presence." ROA.1273.  Both of these claims are the Plaintiff's disagreement with the type of care he received and his allegation of the failure to provide the specific additional treatment he wishes.  As evidenced by an attachment to his *Amended Complaint*, Plaintiff is seeking to be seen by an outside surgeon given his request to be sent to UMCNO. ROA.1292.  Furthermore, Plaintiff admitted that he saw an orthopedic *specialist* on March 21, 2022. ROA.1276, 1277.

Plaintiff insists throughout his *Amended Complaint* that he was supposed to be referred to an orthopedic *surgeon*. ROA.1275-1277, 1279. Plaintiff claimed,

> All Defendants were asked to refer [Plaintiff] to an orthopedic surgeon for consultation to determine the need for surgery to repair or remove the broken screws.  Indeed, even the LSP orthopedic Dr. R. Sylvest recognized the screws may need removal and wrote a Consultant Referral Form seeking approval for [Plaintiff] to be sent to an orthopedic surgeon.

ROA.1279. However, an examination of the document referenced by Plaintiff is a referral to Dr. Sylvest, who did indeed treat plaintiff. ROA.90, 1276, n. 16; 1293.  Nowhere does the Consultant Referral Form to Dr. Sylvest specifically make a referral to an orthopedic *surgeon* as alleged by plaintiff.

Furthermore, plaintiff's *Amended Complaint* admitted that he did receive medical care for his condition by stating "Not that absolutely no treatment has *ever* occurred, except what 'treatment' has been extended cannot repair, replace or remove the broken screws which continue to deteriorate and inflict unnecessary pain and suffering.  *Nor is such treatment correct for this injury* …." ROA.1275.  Plaintiff's *Amended Complaint* also detailed treatment he received for his medical condition.

Importantly, plaintiff admitted that both his legs were swelling, ROA.1276, and that to treat his condition, he was provided an ankle brace, placed on a low sodium diet, provided medication, and provided TED hose. ROA.1274-1277, 1283-1284.  He also admited that he saw an orthopedic *specialist* on March 21, 2022, but complained that the physician was not an orthopedic *surgeon*. ROA.1277.

The "decision whether to provide additional treatment is a classic example of a matter for medical judgment which fails to give rise to a deliberate-indifference claim." *Watts v. Pourciau*, No. CV 20-196-SDD-RLB, 2020 WL 7344613, at *3 (M.D. La. Nov. 16, 2020), *report and recommendation adopted sub nom. Watts v. W. Baton Rouge Par. Det. Ctr.*, No. CV 20-196-SDD-RLB, 2020 WL 7344702 (M.D. La. Dec. 14, 2020). Furthermore, this Court has previously recognized that "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference." *Gobert*, 463 F.3d at 346 (citations omitted).  Therefore, plaintiff cannot satisfy the first prong of the qualified immunity analysis and Dr. Tocé and Dr. Lavespere are entitled to qualified immunity.

## B. The District Court Erred in Finding a Violation of a "Clearly Established" Right.

The second prong of the qualified immunity analysis asks whether the [inmate's] right to treatment for serious medical needs was "clearly established" such that every "reasonable official would understand that what he is doing violates that right." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 123, 141 S. Ct. 1379 (2021) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).  Plaintiff has not shown that "the asserted right was clearly established at the time of the alleged misconduct."  See *Baldwin*, 964 F.3d at 328 (citing *Cleveland v. Bell,* 938 F.3d 672, 676 (5th Cir. 2019)).

A decision to treat an inmate at the prison rather than send him to an outside medical provided does not, even despite a disagreement with that decision, evince deliberate indifference.  See *Alfred v. Texas Department of Criminal Justice*, 80 F.App'x 926, 927-28 (5th Cir. 2003).  The United States District Court for the Eastern District of Louisiana has recognized "[t]his Court notes that plaintiff disagreed in particular with the decision to treat him at the jail's medical department rather than to send him to the hospital.  However, that disagreement does not

17

make his claim actionable.... Simply put, a decision as to whether an inmate should be treated in the jail medical department rather than by outside medical providers is a matter of professional medical judgment." *Russell v. Gusman*, Civ. Action No. 10-1772, 2011 WL 2457925, at *4 (E.D. La. June 17, 2011). The Eastern District Court has also stated "[o]nce he was incarcerated, [plaintiff's] primary source of medical care became the prison medical department, and it was then up to the prison doctor to decide whether outside care was needed. Such decisions are based on the doctor's professional judgment, and, as such, generally are not second-guessed in a federal civil rights action." *Morrison v. Gusman*, Civ. Action No. 10-217, 2010 WL 724173, at *4 (E.D. La. Feb. 22, 2010).

In *Kennedy v. Potter,* this Court discussed whether a neurosurgeon from an outside treatment center was necessary for treatment of a bullet lodged in plaintiff's spine. Importantly, the Court stated that a plaintiff's "disagreement over the next steps in his medical treatment—whether or not a neurosurgeon from an outside treatment center was necessary—is not sufficient to establish deliberate medical indifference." 344 F. App'x 987, 990 (5th Cir. 2009). There was likewise no constitutional violation in *Irby v. Cole,* where a plaintiff complained of misdiagnosis of the

underlying cause of his leg complaints; providing inadequate and appropriate medical care; failure to timely send him for outside medical treatment; delay in treating his injuries, and being placed in administrative segregation in retaliation for requesting outside medical treatment.  278 F. App'x 315, 316 (5th Cir. 2008).

Plaintiff's entire claim is based on the assertion that he should have been referred to an orthopedic *surgeon* and one *outside* the prison. ROA.1275-1277, 1279, 1282, 1292.  "Whether a plaintiff needs to be sent to an outside facility for additional tests or treatment is a matter of professional medical judgment that the courts will not normally second-guess in the context of a claim of deliberate medical indifference." *Thurston v. LeBlanc*, No. CV 19-365-BAJ-SDJ, 2020 WL 4228408, at *3 (M.D. La. July 1, 2020), *report and recommendation adopted*, No. CV 19-00365-BAJ-SDJ, 2020 WL 4248385 (M.D. La. July 23, 2020) (citing C*uellar v. Livingston*, 321 F.Appx. 373, 374 (5th Cir. 2009) (upholding the dismissal of an inmate's claim as frivolous where he complained of a failure to refer him to a specialist, noting that "the question whether 'additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment,'") (quoting *Estelle*, 429

U.S. at 106, 107 and *Corte v. Shaffer*, 24 F.3d 237 (5th Cir. 1994) (concluding that, contrary to the plaintiff's allegation that he had received "no treatment" and that he needed a referral to a specialist, he had failed to demonstrate deliberate indifference where he had been seen by prison medical personnel and where his test results were within a normal range)).

Plaintiff has provided no clearly established law as to what measures defendants were required to take once they learned of the broken screws. He has provided no cases that require the plaintiff to be referred to an outside surgeon rather than the orthopedic specialist to which he was referred and treated by, Dr. Sylvest. Therefore, plaintiff cannot satisfy the second prong of the qualified immunity analysis and Dr. Tocé and Dr. Lavespere are entitled to qualified immunity.

### III.  PLAINTIFF'S COMPLAINTS AS TO HIS DUTY STATUS DO NOT STATE A CONSTITUTIONAL CLAIM.

Plaintiff attempted to assert a claim in his *Amended Complaint* that his denial of the duty status he prefers is a violation of the Eighth Amendment. ROA.1272-1275, ¶ 5, 7, 8, 11, 15, 16, 21, and 1283, ¶66. Plaintiff admited that a particular work duty status by itself cannot form the basis of an Eighth Amendment claim, but asserts that other factors

under the totality of circumstances doctrine may be used, with no basis of authority. ROA.1274.  This Court has previously determined than an inmate's disagreement with his medical condition classification does not state a constitutional claim.  *Winston v. Stacks,* 243 Fed.Appx. 805 (5th Cir. 2007) (citing *Wilson v. Budney,* 976 F.2d 957, 958 (5th Cir. 1992)). In *Winston,* the inmate plaintiff complained about the medical restrictions that medical personnel had placed on his prison job assignment.  The plaintiff wanted even stricter limits on his job assignment, which the court found was not a constitutional violation.  *Id.*  Similarly, plaintiff's request in this matter to have a limited duty status is a disagreement as to his classification and is not a constitutional violation.

### IV. THE DISTRICT COURT ERRED IN ITS REVIEW OF THE ATTACHMENTS AND REFERENCES TO THE AMENDED COMPLAINT.

The district court determined that the only record referenced or attached by the plaintiff that could be central to his claims is a duty status issued in June of 2008 and that none of the other documents are relevant to whether he had stated a claim. ROA.1336, n.1.  However, plaintiff attached two documents to his *Amended Complaint*, which is replete with references to plaintiff's medical records and his treatment

after his referral to a specialist on August 25, 2021. ROA.1271-1286, n.1-17, 20-21, 24, 25, 26, and 27, ROA. 1271-1328.

As noted above, an attachment to a complaint is considered part of the complaint. *See* Fed.R.Civ.P. 10(c); *Williams v. Hargett*, 41 F.3d 663 (5th Cir. 1994) (citing *Neville v. American Republic Ins. Co.,* 912 F.2d 813, 814 n. 1 (5th Cir. 1990)).  Furthermore, when a plaintiff is a *pro se* prisoner, as in the present case, the court is required to consider attachments to his complaint.  *Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005).  A *pro se* prisoner is "held to less stringent standards than formal pleadings drafted by lawyers." *Clark*, 119 F. App'x at 667 (citing *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).  Because of a plaintiff's *pro se* status, "our precedent compels us to examine all of his complaint, including the attachments." *Clark*, 119 F. App'x at 667.  This Court has held:

> In *Howard v. King,* we concluded that the district court erred in ruling on a 12(b)(6) motion by not considering other documents as part of pro se inmates' complaint:
>
>> Most importantly, however, the court was required to look beyond the inmates' formal complaint and to consider as amendments to the complaint those materials subsequently filed.  The court failed to

> consider the inmates' motion, memorandum in
> support, and affidavit, as amendments to the
> complaint.  These documents embellished the
> original complaint's averments, and each should
> have been considered.

*Clark*, 119 F. App'x at 667-668 (quoting *Howard v. King*, 707 F.2d 215,

220 (5th Cir.1983) (citation omitted)).

Plaintiff originally asserted that he received a referral for an

orthopedic clinic on August 25, 2021. ROA.17-18.  He also claimed that

as of the filing of his *Complaint* on July 13, 2022, he had not seen an

orthopedic specialist. ROA.18.  When plaintiff filed his *Amended*

*Complaint*, he referred to the August 25, 2021 Consultant Referral Form

and incorporated it by reference. ROA.1276, n.16, ROA.90.  Plaintiff then

misquoted the Consultant Referral Form as requiring consultation with

an *orthopedic surgeon*. ROA.1275.  Plaintiff stated that "the LSP

orthopedic Dr. R. Sylvest recognized the screws may need removal and

wrote a Consultant Referral Form seeking approval for Mr. Stevenson to

be sent to an orthopedic surgeon." ROA.1279.

The district court mistakenly found that "On August 25, 2021, the

plaintiff was seen by orthopedist Dr. Sylvest. ROA.1333.  The district

court relied on plaintiff's language in the *Amended Complaint*, that a

"specialist, Dr. Sylvest, recommended that the plaintiff be evaluated by an orthopedic surgeon.  To date, the plaintiff has not been evaluated by an orthopedic surgeon." ROA.1336, 1275-1277, 1279, ¶ 22, 28, 30, 31, 34 and 47.  The district court also stated, "[d]espite the plaintiff's complaints and the lack of evaluation by a surgeon, the defendants have still refused to provide the plaintiff with an appropriate duty status." ROA.1333.

However, the documents that **plaintiff attaches and references** in his *Amended Complaint* negate that an *orthopedic surgeon* was recommended. ROA.1276, n.16, ROA.90, 1293.  Additionally, plaintiff admits in his *Amended Complaint* that he was seen by an orthopedic specialist on March 21, 2022, but complains it was not an *orthopedic surgeon*. ROA.1277, 1279.  Plaintiff also refers to treatment that he received after August 25, 2021. ROA.1281, 1283, 1285.

An examination of the Consultant Referral Form, referred to by plaintiff in his *Amended Complaint*, which is part of the pleadings, is not to **an orthopedic surgeon by Dr. Sylvest it is to Dr. Sylvest, an orthopedist**, **by Dr. Lavespere**. ROA.90.  The Consultant Referral Form states, "REQUEST FOR CONSULTATION (please specify location/physician): Dr. Sylvest." ROA.90.  The referral is **to Dr. Sylvest**

24

**by Dr. Lavespere** that states "Please evaluate [right] ankle—possible broken screws—may need to be removed—Any restrictions needed!" ROA.1276, n. 16, ROA.90.   Plaintiff was not seen by Dr. Sylvest on August 25, 2021, as the district court stated, **he was referred to Dr. Sylvest by Dr. Lavespere**. ROA.90.   Nowhere does the Consultant Referral Form to Dr. Sylvest, an orthopedist, specifically make a referral to an orthopedic *surgeon* as alleged by plaintiff.

The district court did not take into consideration the August 15, 2022 letter attached by plaintiff to his *Amended Complaint* wherein Dr. Paul Tocé informs plaintiff that he was seen in the Orthopedic Clinic on September 23, 2021, less than one month after the referral; that the doctor recommended a lace up brace; that plaintiff was seen again on March 21, 2022; and that the doctor did NOT recommend surgery, but did recommend heel stretches. ROA.1293.   Furthermore, plaintiff referenced this exact treatment on September 23, 2021, and March 21, 2022, in his *Amended Complaint*. ROA 1276-1277.  The letter of Dr. Tocé and the treatment referenced by plaintiff in his *Amended Complaint*, became part of the pleadings and should have been considered by the district court.

On September 23, 2021, when Dr. Sylvest did treat the plaintiff, the doctor noted the broken screws from an X-ray and prescribed the lace-up brace and follow-up in six months. ROA.89, 1293. Dr. Sylvest again saw the plaintiff on March 21, 2022, and recommended heel stretches and follow up as needed. ROA.88, 1293. Therefore, unlike what the district court found, no physician has recommended that plaintiff be evaluated by an *orthopedic surgeon*, as noted by the documents attached and referred to in plaintiff's *Amended Complaint.* The referral was to Dr. Sylvest, an orthopedist, who did treat plaintiff. A review of the documents Plaintiff attaches and references to his *Amended Complaint* reveal that the district court's decision is based on the erroneous information that plaintiff was referred to an *orthopedic surgeon.* ROA 1336.

## V.   THE DISTRICT COURT ERRED IN REFUSING TO CONSIDER THE DOCUMENTS ATTACHED TO THE MOTON TO DISMISS.

It is evident from the *Complaint*, *Amended Complaint*, and its references and attachments that neither Dr. Tocé nor Dr. Lavespere committed medical indifference. However, the district court also refused to consider the documents attached to the defendants' *Motion to Dismiss.* ROA.1335-1336. The *Amended Complaint* included attachments and

reference to medical records and other documents. In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 F. App'x. 336, 340-41 (5th Cir. 2011). While it is true that the court has the option to consider such records, *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020), the court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated into the plaintiff's complaint by reference that are central to the plaintiff's claim for relief. *Barbe v. Ocwen Loan Servicing, LLC,* 383 F. Supp. 3d 634, 640–41 (E.D. La. 2019) (*Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (citation omitted) ("[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.");.

See *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007) ("A court is permitted, however, to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'").

Plaintiff attached Exhibit 2 to his *Amended Complaint* evidencing that he received treatment on September 23, 2021 and March 21, 2022, and the actual medical records showing the exact treatment received were attached to the *Motion to Dismiss.* ROA.1293, 88-89. The district court found that the medical records are not the basis of the claim. ROA.1336. However, the basis of plaintiff's claim is that he did not get the treatment he claims he was required, an *orthopedic surgeon*, and his own references and attachment evidence plaintiff was never referred to an *orthopedic surgeon.* He was referred to Dr. Sylvest, an orthopedist, who determined that the necessary treatment was the lace-up brace and follow-up in six months. ROA.89, 1293.

Defendants assert that the medical references and attachments to the *Motion to Dismiss* are the basis of the medical indifference claims asserted by plaintiff, and the district court erred in refusing to consider

those documents which are central to the plaintiff's claim.   Plaintiff alleges that x-rays taken in May 2006 and March 2020 revealed broken surgical screws. ROA.16.   He claims that he did not learn of the broken screws until April 27, 2021, at which time he requested to be sent to an outside facility for the removal of the screws. ROA.17.

The medicals of Plaintiff reveal that he was seen in the Orthopedic Clinic on May 21, 2007, complaining of right ankle pain.  ROA 119.  The doctor referred to the May 18, 2006 x-ray indicating that one of the screws from a 2003 injury was broken. ROA.119.  Plaintiff was prescribed an ankle brace, which was delivered on June 13, 2007. ROA.118-119.  However, there is no documentation that surgical repair was needed.  ROA.118, 120.  On June 9, 2008, Plaintiff was seen in the Physicians Clinic of Camp C. ROA.74, 116.  While there is no indication of complaints of Plaintiff, the note from that visit placed Plaintiff on regular duty with restrictions, no prolonged walking or standing, no sports, and no hobbycraft. ROA.116-117.

On February 9, 2010, Plaintiff was diagnosed with high blood pressure and placed on a low sodium diet. ROA.72.  On May 10, 2010, Plaintiff was seen for an annual visit and he complained of his injured

ankle hurting while walked the tier. His extremities exam was normal, and the medical record indicates an old ankle injury. ROA.115. Plaintiff was seen sporadically over the years. After a fight on August 10, 2011, Plaintiff had no physical complaints. ROA.114. After another altercation on February 8, 2013, plaintiff had left hip pain, which he was also treated for in 2016. ROA.81-84, 110-113. Plaintiff was also treated for the left hip pain in 2017, and on May 25, 2017, Plaintiff was seen in the Orthopedic Clinic complaining of left knee pain, for which he was given a Kenalog injection in his left knee. ROA.86-87, 108-109. Plaintiff made no complaints regarding his right ankle. ROA.86-87, 108-109. Plaintiff returned to the Orthopedic Clinic on June 6, 2017, for follow-up pertaining to the Kenalog injection in his left knee and received a second Kenalog injection in his left knee, but made no complaints regarding his right ankle. ROA.107. He again followed up for the left knee in the Orthopedic Clinic on October 12, 2017, at which time Plaintiff made no complaints of his right ankle. ROA.106. The only doctor visit he had in 2018 was on November 6, 2018, for his right knee swelling after he hit it on a truck. ROA.105.

In early 2019, the medical records indicate Plaintiff was treated for his blood pressure, cardiac issues, diabetes, and renal problems, and had originally been put on a low sodium diet in 2010. ROA.76, 101. On March 18, 2019, Plaintiff had an annual exam with normal extremities. ROA.100.

On April 8, 2019, Plaintiff was seen in Clinic A complaining of swelling in his right ankle from a previous surgery. ROA.99. The doctor documented **bilateral edema** and prescribed bilateral knee high compression socks. ROA.98-99. This is Plaintiff's first complaint of right ankle pain since May 10, 2010, almost nine years later. It should be noted that both of Plaintiff's legs were swollen, not just his right ankle. ROA.99.

A little over three months later on July 22, 2019, Plaintiff was seen in Clinic A and had no complaints. He was able to move without difficulty. The doctor noted that there was no reason for limited duty status. ROA.72-73, 97. On September 9, 2019, Plaintiff complained about wanting his old duty status back, even though he could ambulate without difficulty. ROA.96. On October 10, 2019, Plaintiff was given TED knee high hose. ROA.95. Plaintiff complained of leg swelling on January 1,

31

2020. The healthcare practitioner noted that Plaintiff ambulated without difficulty. Furthermore, Plaintiff complained that his left leg hurt worse than the right leg. Plaintiff stated that he had pins in his ankle. Plaintiff was on regular duty status and requested his old duty status back. Both legs were swollen at this time. ROA.94.

On March 5, 2020, Plaintiff was seen in the General Medical Clinic, and the physician noted that Plaintiff was using salt in his food. ROA.93. Plaintiff wanted a limited duty status for his right ankle. The physician noted that Plaintiff was not wearing the TED hose he was prescribed on October 19, 2019, and an x-ray of his right ankle was ordered. ROA.93. The x-ray of the right ankle taken on March 8, 2020, showed postoperative changes involving the right ankle, two broken screws, arthritic changes involving the ankle, and a heel spur. ROA.104. Plaintiff was seen in the General Medicine Clinic on October 26, 2020. At that time, he was ambulatory and complained of right ankle pain. His right ankle was swollen with limited range of motion. Plaintiff stated that he previously had a duty status with no field work and sports, and he wanted that duty status back. ROA.92.

Plaintiff was seen in the General Medicine Clinic on April 27, 2021, for a rash on his face. ROA.91.  Plaintiff claims that he was unaware of the broken screws until this visit. ROA.95.  On August 25, 2021, Plaintiff was referred to the orthopedic clinic for evaluation of his right ankle. ROA.90.  Within a month, on September 23, 2021, Plaintiff received another x-ray, was seen in the Orthopedic Clinic, and treated with a brace. ROA.78-79, 89, 102-103.  He also received follow up care six months later in the Orthopedic Clinic on March 21, 2022. ROA.88.

Prior to April 8, 2019, Plaintiff's last complaint of ankle pain was almost nine years earlier on May 10, 2010 and before that on June 9, 2008. ROA.99, 74, 115-116.  However, it was noted on April 8, 2019, that both of Plaintiff's legs were swollen, a condition he had been treated for over the course of many years due to high blood pressure. ROA.99, 101, 76-77.  Plaintiff sporadically complained of pain in his right ankle on September 9, 2019, March 5, 2020, and October 26, 2020, but he also had bilateral swelling during this time, was using salt in his food, and not wearing the prescribed TED hose. ROA.92-96, 75, 80.  Most importantly, Plaintiff received Orthopedic care for his ankle on September 23, 2021 and March 21, 2022, despite his claims otherwise. ROA.88-89.

Plaintiff has received medical care throughout the entire period that he claims he was unaware of the broken screws and after he learned of the broken screws. While it may not be the medical care he wants, the screws removed from his ankle, Plaintiff has not stated a claim of medical indifference against either Dr. Tocé or Dr. Lavespere. At some periods in his care, both legs were swollen, not just the right leg. Furthermore, plaintiff was not compliant with a low salt diet or wearing the TED hose he was prescribed due to high blood pressure. Additionally, at no point did any healthcare provider recommend removal of the broken screws.

Based on the law cited above, the medical records attached to the *Motion to Dismiss* are central to plaintiff's claims and should have been considered by the district court.

## CONCLUSION

The district court errd in finding that plaintiff stated a claim for medical indifference, that qualified immunity did not apply, that the doucments referenced and attached to his *Amended Complaint* were not incorporated into his claims, and that the documents attached to the *Motion to Dismiss* were not central to plaintiff's claims. Therefore, defendants, Dr. Paul Tocé and Dr. Randy Lavespere, request this

34

Honorable Court reverse the district court's decision on defendants'

*Motion to Dismiss.*

Respectfully submitted,

JEFF LANDRY
Louisiana Attorney General

*/s/ Dawn T. Mire*
DAWN T. MIRE (La. #21096)
Assistant Attorney General

Louisiana Department of Justice,
Litigation Division
1885 North Third Street, 4th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6300
Facsimile: (225) 326-6495
E-mail: MireD@ag.louisiana.gov
*Counsel for Defendants-Appellants*

# CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2023, I electronically filed the foregoing brief with the Clerk of Court by using the CM/ECF system, which will provide notice of the filing to all counsel of record who receive electronic notices.

I further certify that the foregoing was served on the *pro se* plaintiff on September 11, 2023, by placing a copy in the U.S. Mail on that date directed to:

Bobby Stevenson, #120379
Louisiana State Penitentiary
General Delivery
Angola, LA 70712

*/s/ Dawn T. Mire*
Dawn T. Mire
Counsel for Defendants-Appellants

# CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that:

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains <u>6,849</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016, Century Schoolbook, 14-point font.

*/s/ Dawn T. Mire*
Dawn T. Mire
Counsel for Defendants-Appellants
September 11, 2023