No. 23-30486

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

—————————————————

BOBBY STEVENSON,

*Plaintiff-Appellee,*

*v.*

PAUL M. TOCÉ IN HIS INDIVIDUAL CAPACITY, RANDY LAVESPERE IN
HIS INDIVIDUAL CAPACITY

*Defendants-Appellants.*

—————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:22-CV-472—Nelva Gonzalez Ramos, *Judge.*

—————————————————

**PLAINTIFF-APPELLEE BOBBY STEVENSON'S
RESPONSE BRIEF**

—————————————————

Danielle Hamilton
Nathan Celestine, *Student Counsel*
Northwestern Pritzker School of Law
Federal Appellate Litigation Clinic
Bluhm Legal Clinic
375 E Chicago Ave.
Chicago, IL 60611
312.513.8576
danielle.hamilton@law.northwestern.edu

Samuel Weiss
Rights Behind Bars
416 Florida Avenue NW #26152
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellee Bobby
Stevenson*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Bobby Stevenson, Plaintiff-Appellee

Counsel for Plaintiff-Appellee:

      Samuel Weiss, Rights Behind Bars

      Danielle Hamilton, Nathan Celestine (student counsel), Northwestern Pritzker School of Law Federal Appellate Litigation Clinic, Bluhm Legal Clinic

Paul M. Tocé, Defendant-Appellant

Randy Lavespere, Defendant-Appellant

Counsel for Defendants-Appellants:

      Jeff Landry, Louisiana Attorney General

      Dawn T. Mire,

      Louisiana Department of Justice, Office of the Attorney General

/s/ Danielle Hamilton

*Counsel for Plaintiff-Appellee Bobby Stevenson*

## STATEMENT REQUESTING ORAL ARGUMENT

Plaintiff-Appellee Bobby Stevenson respectfully requests oral argument because it will assist this Court in resolving the important issues raised by this appeal. First, the Court should have the benefit of oral argument because this case deals with jurisdictional issues in interlocutory appeals of the denial of qualified immunity. Second, oral argument would allow the Court to understand more easily the relevant facts as alleged in Mr. Stevenson's multiple pro se pleadings. Lastly, counsel in this case are serving *pro bono* as a service to the community and as a pedagogical tool for clinical law students working under the supervision of a practicing civil rights attorney. With the Court's indulgence, oral argument presents a valuable opportunity for a third-year law student to practice advocacy on behalf of a client.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERONS ........................................................ i

STATEMENT REQUESTING ORAL ARGUMENT ............................................. ii

JURISDICTIONAL STATEMENT ...................................................................... 1

STATEMENT OF THE ISSUES .......................................................................... 3

STATEMENT OF THE CASE .............................................................................. 4

      A.   Stevenson is exempted from hard labor because of
           his ankle surgery. ............................................................... 4

      B.   Defendants ignore Stevenson's numerous complaints
           of pain and suffering. ......................................................... 5

      C.   Stevenson discovers the broken screws causing his
           severe pain. ........................................................................ 6

      D.   Stevenson is recommended for an orthopedic
           surgeon's evaluation. ......................................................... 6

      E.   Defendants continue to ignore Stevenson's medical
           complaints and refuse to treat him. .................................... 7

      F.    Procedural History ............................................................. 9

SUMMARY OF THE ARGUMENT .................................................................... 11

ARGUMENT ..................................................................................................... 13

    I.    This Court lacks jurisdiction over Defendants' appeal of
         qualified immunity. ............................................................. 13

      A.   Jurisdiction over interlocutory appeals is exceedingly
           narrow, extending only to "purely legal" issues. .......................... 13

      B.   There is no jurisdiction over a qualified immunity
           appeal that disputes a district court's factual findings. ................. 14

C.  Defendants contest the District Court's acceptance of Stevenson's well-pleaded facts and inferences therefrom, depriving this Court of jurisdiction............................ 16

II.  If this Court does have jurisdiction, the District Court correctly denied Defendants' motion to dismiss on the ground that Defendants were not entitled to qualified immunity. ....................................................................................... 18

A.  Standards of Review ..................................................... 19

B.  The District Court correctly determined that Stevenson's allegations stated a claim of deliberate indifference under the Eighth Amendment.................................. 21

C.  Defendants violated a clearly established right............................ 25

III.  Defendants' motion to dismiss should also have been denied because the doctrine of qualified immunity is contrary to the original text of Section 1983..................................... 29

IV.  This Court lacks jurisdiction to decide Defendants' non-immunity-related issues raised on appeal. ......................................... 30

CONCLUSION.................................................................................... 32

# TABLE OF AUTHORITIES

## Cases

*Allen v. Hays*,
   812 F. App'x 185 (5th Cir. 2020)................................................................ 32

*Armstrong v. Ashley*,
   918 F.3d 419 (5th Cir. 2019)................................................ 2, 14, 15, 30

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ...................................................................................... 26

*Austin v. Johnson*,
   328 F.3d 204 (5th Cir. 2003)............................................................ 24, 26, 29

*Baldwin v. Dorsey*,
   964 F.3d 320 (5th Cir. 2020) ...................................................................... 25

*Behrens v. Pelletier*,
   516 U.S. 299 (1996) .................................................................... 13, 14, 15

*Brown v. Miller*,
   519 F.3d 231 (5th Cir. 2008) .................................................................. 19, 20

*Carlucci v. Chapa*,
   884 F.3d 534 (5th Cir. 2018) ...................................................................... 22

*Ctr. for Biological Diversity v. United States Envtl. Prot. Agency*,
   937 F.3d 533 (5th Cir. 2019) ................................................................ 16, 30

*Domino v. Texas Dept. of Criminal Justice*,
   239 F.3d 752 (5th Cir. 2001) ................................................................ 20, 22

*Dyer v. Houston*,
   964 F.3d 374 (2020) ...................................................................................... 20

*Estelle v. Gamble*,
   429 U.S. 97 (1976) .................................................................................. 20, 27

*Foerster v. Bleess*,
   2022 U.S. App. LEXIS 127 (5th Cir. 2022)................................................ 31

*Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*,
   255 F. App'x 775 (5th Cir. 2007)................................................................ 30

*Good v. Curtis*,
   601 F.3d 393 (5th Cir. 2010) ...................................................................... 13

*Gregg v. Georgia*,
   428 U.S. 153 (1976) ..................................................................... 27

*Haines v. Kerner*,
   404 U.S. 519 (1972) ..................................................................... 19

*Hope v. Pelzer*,
   536 U.S. 730 (2002) ..................................................................... 26

*Isquith ex rel Isquith v. Middle S. Utils., Inc.*,
   847 F.2d 186 (5th Cir. 1988) ...................................................... 32

*Jackson v. Cain*,
   864 F.2d 1235 (5th Cir. 1989) .............................................. 24, 28

*Johnson v. Jones*,
   515 U.S. 304 (1995) .............................................................. 13, 14

*Kelson v. Clark*,
   1 F.4th 411 (5th Cir. 2021) .......................................... 19, 20, 25

*Kinney v. Weaver*,
   367 F.3d 337 (5th Cir. 2004) ......................................... 2, 14, 30

*Lone Star Fund V (U.S.) v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ...................................................... 31

*McLin v. Ard*,
   866 F.3d 682 (5th Cir. 2017) ...................................................... 19

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ..................................................................... 14

*Olabisiomotosho v. City of Houston*,
   185 F.3d 521 (5th Cir. 1999) ............................................... 25, 28

*Ramirez v. Escajeda*,
   921 F.3d 497 (5th Cir. 2019) ............................................... 14, 15

*Rich v. Palko*,
   920 F.3d 288 (5th Cir. 2019) ...................................................... 15

*Rodrigue v. Grayson*,
   557 F. App'x 341 (5th Cir. 2014) ........................................ 23, 24

*Southall v. Arias*,
   256 F. App'x 674 (5th Cir. 2007) ............................................... 15

*Thompson v. McCoy*,
   365 F. App'x 601 (5th Cir. 2010) ............................................... 22

*Winfrey v. Pikett*,
    872 F.3d 640 (5th Cir. 2017) ........................................................ 13

**Statutes**

28 U.S.C. § 1291 ............................................................................... 14

42 U.S.C. § 1331 ................................................................................. 1

42 U.S.C. § 1983 ................................................................................. 1

**Rule**

Federal Rule of Procedure 12(b)(6) ....................................... 1, 2, 34, 36

**Treatise**

5 C. Wright & A. Miller, Federal Practice and Procedure § 1366
    (1969) ......................................................................................... 33

**Other Authority**

Reinert, Alexander A., Qualified Immunity's Flawed Foundation, 111
    Cal. L. Rev. 201 ........................................................................... 29

## JURISDICTIONAL STATEMENT

Defendants' jurisdictional statement is not complete and correct. As discussed in detail in the argument section below, this Court lacks jurisdiction.

Plaintiff-Appellee Bobby Stevenson, a prisoner in Louisiana State Penitentiary, sought monetary damages and injunctive relief for violations of his Eighth Amendment rights. ROA.7-22, ROA.1271-89. Defendants Paul M. Tocé, Randy Lavespere, and Jacob C. Johnson are physicians at Louisiana State Penitentiary. ROA.12-14. The District Court had subject-matter jurisdiction to hear Stevenson's suit under 42 U.S.C. § 1331 and 42 U.S.C. § 1983.

On December 7, 2022, Defendants moved to dismiss Stevenson's complaint under Federal Rule of Procedure 12(b)(6). ROA.47-49. Defendants argued qualified immunity barred Stevenson's suit. ROA.50-70. On May 18, 2023, the Magistrate Judge issued a lengthy Report and Recommendation denying the motion as to Defendants Lavespere and Tocé. The Magistrate Judge reasoned that Stevenson's well-pleaded allegations that Defendants Lavespere and Tocé ignored his medical complaints regarding in his ankle for over a year before referring him to an orthopedic specialist; continued to ignore his complaints since the examination by the orthopedic specialist; and did not follow the specialist's recommendation that Stevenson be evaluated by an orthopedic surgeon stated a claim under the Eighth Amendment. ROA.1330-1338. The Magistrate Judge

granted Defendants' Rule 12(b)(6) motion as to Defendant Johnson. *Id.* On June 20, 2023, the District Court conducted a *de novo* review and adopted the Report and Recommendations of the Magistrate Judge. ROA.1364. Defendants Tocé and Lavespere filed a notice of appeal on July 17, 2023. ROA.1397-98.

Defendants are correct that a narrow exception to the final judgment rule permits parties to immediately appeal the denial of qualified immunity, "only to the extent that the appeal concerns the purely legal question whether the defendants are entitled to qualified immunity on the facts." *Armstrong v. Ashley*, 918 F.3d 419, 422 (5th Cir. 2019) (quoting *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (*en banc*)). Here, Defendants raise fact disputes about the District Court's acceptance of Stevenson's well-pleaded allegations; fail to advance any legal arguments about qualified immunity; and raise arguments unrelated to qualified immunity. None of Defendants' arguments invoke this Court's narrow interlocutory jurisdiction to consider this appeal. Therefore, this Court should dismiss the appeal for lack of jurisdiction.

## STATEMENT OF THE ISSUES

1. Does this Court lack jurisdiction to consider Defendants' interlocutory qualified-immunity appeal when Defendants do not raise any issues of law and instead, only raise factual disputes?

2. If this Court determines it has jurisdiction to consider Defendants' fact-based appeal, did the District Court correctly deny Defendants' motion to dismiss Stevenson's complaint on the ground that Defendants were not entitled to qualified immunity?

3. Does this Court lack jurisdiction to review the District Court's decisions unrelated to qualified immunity?

4. If the Court determines it has jurisdiction to decide Defendants' non-immunity-related issues raised on appeal, did the District Court abuse its discretion when it did not consider documents outside the complaint in deciding Defendants' motion to dismiss?

# STATEMENT OF THE CASE

Plaintiff-Appellee Bobby Stevenson is incarcerated at Louisiana State Penitentiary. On October 8, 2003, he suffered a severe right ankle injury while playing basketball. ROA.11 at ¶ 1. The injury required treatment by an orthopedic specialist and surgeon at an outside facility where screws were used to surgically fixate Stevenson's tibia and fibula. ROA.12 at ¶ 2.

## A. Stevenson is exempted from hard labor because of his ankle surgery.

On December 23, 2003, prison medical staff approved Stevenson being issued an "Out of Field" duty status for medically necessary treatment, prohibiting prolonged walking, or standing in recognition of the injury, consequent physical limitations, and to avoid breaking the surgical screws. ROA.1272 at ¶ 5. Sometime after Stevenson was issued a limited duty status, prison medical staff approved changing Stevenson's status back to working in the prison's agricultural fields. ROA.1273 at ¶ 9. Stevenson returned to working in the fields.

Beginning in May 2006, Stevenson began to suffer shooting pain from his ankle to his right knee along the area where the screws were implanted. He complained to staff of nerve damage after years of inflammation that he suspected was related to the screws in his ankle. ROA.1274-75 at ¶ 19, ROA.18 at ¶ 46. In May of 2006, Stevenson had an x-ray taken of his ankle, which indicated one of the screws had broken. No one notified Stevenson of the break. ROA.1274 at ¶18,

ROA.15-16 at ¶ 24. Dr. Sylvest, not Defendants, provided an ankle brace to stabilize his ankle, but Stevenson's reported pain and swelling continued. ROA.1274-75 at ¶ 19. Prison medical staff permanently changed Stevenson's duty status back to limited duty on June 5, 2008, to prevent the screws from further breakage. ROA.1272-73 at ¶ 7. Stevenson continued to complain of debilitating pain and swelling for years, but his complaints went unaddressed. ROA.16 at ¶ 27.

## B. Defendants ignore Stevenson's numerous complaints of pain and suffering.

Defendant Dr. Paul Tocé, the Louisiana State Penitentiary Medical Director, reviews and approves or disapproves staff physicians' recommendations for duty status changes and requests for outside referrals. ROA.12-13 at ¶ 12. On various occasions during Stevenson's incarceration, Dr. Tocé examined him for renewal of Stevenson's limited duty status, and repeated complaints of leg, knee, and foot swelling and pain. ROA.12-13 at ¶ 12. In addition, Defendant Dr. Randy Lavespere, the Medical Director for the Department of Public Safety and Corrections, examined Stevenson for many complaints of pain, swelling, and requests for a limited duty status in connection with Stevenson's right ankle injury. ROA.13-14 at ¶ 13, ROA.16 at ¶ 26.

On July 23, 2019, Dr. Lavespere reviewed Stevenson in connection with his request for a limited duty status. ROA.1275 at ¶ 20. Despite Dr. Lavespere's knowledge of Stevenson's ankle injury, pain, and swelling, he decided and

documented that he saw no reason for a limited duty status. ROA.16 at ¶ 26, ROA.18 at ¶ 44, ROA.1275 at ¶ 20. Consequently, Stevenson was then placed back on permanent regular duty to toil the agricultural fields. ROA.18 at ¶ 44. On or about March 11, 2020, Stevenson had another x-ray taken of his ankle, revealing another broken surgical screw. ROA.16 at ¶ 25. Like the first broken screw in May 2006, Defendants did not inform Stevenson of this breakage either. *Id.*

**C. Stevenson discovers the broken screws causing his severe pain.**

On April 27, 2021, Stevenson went in for a medical appointment and was seen by a general medicine physician. At the appointment, Stevenson again complained of pain in his ankle, chronic swelling of his foot and legs, and requested to be provided a duty status that would exempt him from having to work in the agricultural fields. ROA.15-16 at ¶ 24. The physician pulled Stevenson's medical record and located x-rays from May 2006 and March 11, 2020, that showed that screws in Stevenson's ankle had broken. The physician informed Stevenson of the broken screws. ROA.1281 at ¶ 56, ROA.15-16 at ¶¶ 24-25. This was the first time Stevenson was informed that the screws in his ankle had broken. *Id.*

**D. Stevenson is recommended for an orthopedic surgeon's evaluation.**

On August 25, 2021, Stevenson was seen by Dr. Ronald Sylvest, an orthopedic doctor. Dr. Sylvest wrote a consultation and referral for an orthopedic

surgeon to determine the need for surgical removal of the broken screws.
ROA.1276 at ¶¶ 28, 30. Dr. Sylvest also requested a modification to Stevenson's
duty status until the problem with the broken screws was resolved, *id.*, and
informed Stevenson that he would be sent an ankle brace to stabilize the ankle until
the fractured screws and the problems it was causing could be evaluated by an
orthopedic surgeon. ROA.1276-77 at ¶ 32. Dr. Sylvest observed Stevenson's right
ankle was extremely painful to simple pressure, and informed Stevenson that the
broken screws were likely causing the pain and swelling. ROA.1276 at ¶ 30.

**E. Defendants continue to ignore Stevenson's medical complaints and refuse to treat him.**

On September 8, 2021, Stevenson received another x-ray of his ankle, which
revealed a complication by fracture of the surgical screws. ROA.1284 at ¶ 75,
ROA 1276 at ¶ 27. Dr. Tocé signed off on this x-ray report ROA.1284 at ¶ 76. As
of the filing of Stevenson's lawsuit, Stevenson's duty status to regular labor in the
agricultural fields had not been altered, ROA.18 at ¶ 43, and Defendants refused to
send Stevenson to be evaluated by an orthopedic surgeon. ROA.1279 at ¶ 47.

On March 11, 2022, Stevenson was seen in the prison's clinic, which
documented him wearing the ankle brace, reporting severe nerve pain in his ankle,
and still waiting for his follow-up with an orthopedic surgeon. ROA.1285 at ¶ 82.
On March 21, 2022, Stevenson was screened by an orthopedic specialist.

ROA.1277 at ¶ 34. The specialist prescribed heel stretches and a lace up brace to treat a heel spur recorded on an x-ray report from 2021. *Id.*

On June 15, 2022, Stevenson sent a letter Defendant Dr. Jacob Johnson, the prison's Long Term Care Hospital Administrator. ROA.14 at ¶14. In Stevenson's letter, he requested that Dr. Johnson ensure that Stevenson was referred to an orthopedic surgeon because of the 18-year delay since the first broken screw was detected by x-ray. ROA.19 at ¶¶ 48-49. Dr. Tocé responded to this letter on August 15, 2022, stating that a lace up brace and heel stretches—not surgery—were recommended on March 21, 2022. ROA.1277 ¶ 33. Consequently, Dr. Johnson did not provide Stevenson with a limited duty status or referral to an orthopedic specialist. *Id.*

Defendants both knew of the presence of the broken screws, but despite Stevenson's many complaints to each of them of his pain, swelling, and requests for a limited duty status, did nothing to provide access to an orthopedic specialist and/or surgeon to assess the complication and/or have the screws removed or repaired. ROA.16 ¶ 27, ROA.12 at ¶ 11, ROA.15 at ¶ 22.  Instead, they placed Stevenson on a low sodium diet to treat hypertension, ROA.1275-76 at ¶ 25, prescribed TED hose for treatment of venous insufficiency, ROA.1276 at ¶ 26, an ankle brace (notably, acquired from Dr. Sylvest, not from either of the Defendants) ROA.1276-77 at ¶ 32-33, and heel stretches. ROA.1277 at ¶ 34. He continues to

suffer pain and swelling due to the broken screws, and now walks abnormally due to debilitating pain, which has also caused him knee and hip pain. ROA.1275 at ¶ 24.

### F. Procedural History

On July 14, 2022, Stevenson, acting pro se, filed a lawsuit seeking injunctive relief against Defendants Lavespere and Johnson in their official and individual capacities. Stevenson sought an order requiring Defendants Lavespere and Johnson to prioritize his referral to an orthopedic specialist; removal, repair, or replacement of the broken screws in his ankle; and a limited duty status and work assignment. ROA.13-14 at ¶¶ 13, 14, ROA.20 at ¶ 62. Stevenson also sought monetary damages against Defendants Lavespere and Tocé in their individual capacities. ROA.12-14 at ¶¶ 12, 13, ROA.20 at 62.

On December 7, 2022, Defendants filed a motion to dismiss on grounds of qualified immunity. ROA.47-49. In response, on January 12, 2023, Stevenson filed a motion to amend and consolidate and reply to Defendants' motion to dismiss. ROA.1179-99. On May 17, 2023, the District Court permitted Stevenson to amend his complaint. ROA.1270. Stevenson filed his amended complaint the same day. ROA.1271-91, ROA.4.

On May 18, 2023, the Magistrate Judge issued a comprehensive and detailed Report and Recommendation granting Defendants' motion to dismiss as to

Defendant Johnson and denying it as to Defendants Tocé and Lavespere. ROA.1130-38. On May 26, 2023, Defendants objected to the Magistrate Judge's recommendations on the grounds that the Magistrate Judge should not have considered attachments to Stevenson's complaint; should have considered the documents they attached to their motion to dismiss; and Defendants were entitled to qualified immunity. ROA.1343-57. On June 20, 2023, the District Court conducted *de novo* review of the Stevenson's complaint and adopted the Magistrate's recommendation *in toto*. ROA.1364. On July 11, 2023, Defendants answered the complaint denying all of Stevenson's allegations. ROA.1365-96. On July 17, 2023, Defendants filed a notice appealing the District Court's denial of their motion to dismiss as to Lavespere and Tocé. ROA.1397-98. Defendant Johnson does not appeal the District Court's decision. *Id.*

## SUMMARY OF THE ARGUMENT

This Court does not have jurisdiction to review Defendants' qualified immunity appeal. Defendants contest the allegations that the District Court accepted as true, and now argue the propriety of the District Court's denial of their claims of qualified immunity based on Stevenson's complaint as the Defendants have revised and accepted it. This is not the correct standard to apply on appeal of a denied motion to dismiss based on qualified immunity, and therefore Defendants' appeal should be dismissed for lack of jurisdiction.

If this Court determines it has jurisdiction to consider this appeal, it should affirm the District Court's well-reasoned finding that Defendants are not entitled to qualified immunity. First, the District Court correctly found that Stevenson alleged sufficient facts that, accepted as true, stated a facially plausible claim that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Second, Defendants have long been on notice that their conduct violated the Eighth Amendment. In addition, the doctrine of qualified immunity is itself in violation of statutory text and should be abandoned.

This Court also lacks jurisdiction to review Defendants' other argument on appeal because it is unrelated to qualified immunity. Specifically, Defendants argue that the District Court erred when, acting within its broad discretion, it chose not to consider documents outside of the complaint in deciding Defendants' motion

to dismiss. But the District Court's decision is not final and does not relate to Defendants' qualified immunity, and so this Court lacks jurisdiction. If the Court determines it has jurisdiction, the District Court was well within its broad discretion to not consider documents outside the complaint when ruling on Defendants' motion to dismiss.

## ARGUMENT

### I.     This Court lacks jurisdiction over Defendants' appeal of qualified immunity.

This Court has jurisdiction to review the denial of motions to dismiss based on qualified immunity only where they present the purely legal issues relating to qualified immunity. Where, as here, Defendants predicate their legal issues of qualified immunity on their own disputed versions of the facts (rather than accepting the District Court's findings of the facts as alleged in Stevenson's complaint), there is no legal issue of qualified immunity for this Court to decide. This Court, therefore, has no jurisdiction over this appeal.

### A.     Jurisdiction over interlocutory appeals is exceedingly narrow, extending only to "purely legal" issues.

This Court has "jurisdiction to hear appeals only from 'final decisions' of district courts." *Johnson v. Jones*, 515 U.S. 304, 309 (1995) (citing 28 U.S.C. § 1291). Accordingly, "interlocutory appeals—appeals before the end of district court proceedings—are the exception, not the rule." *Id*. To properly invoke appellate jurisdiction, an appeal must satisfy two conditions. First, the order appealed from must turn on qualified immunity. *Id*. And second, the appeal itself must turn "on an issue of law." *Winfrey v. Pikett*, 872 F.3d 640, 643-44 (5th Cir. 2017) ("*Winfrey I*") (citing *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996)); *Johnson*, 515 U.S. at 313; *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010)).

The Supreme Court has emphasized that the scope of a permissible interlocutory appeal is narrow, because the limited appellate jurisdiction extends only to those "dispute[s] concerning an 'abstract issue of law' relating to qualified immunity." *Behrens*, 516 U.S. at 313 (quoting *Johnson*, 515 U.S. at 317). At this stage, the only "appealable issue is a purely legal one: whether the facts alleged . . . support a claim of violation of clearly established law." *Johnson*, 515 U.S. at 313 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 529, n.9 (1985)).

Summarizing these same principles in a pleadings-stage case, this Court expressed that "[a] decision on qualified immunity can be an appealable final decision, 'but only to the extent that the appeal concerns the purely legal question whether the defendants are entitled to qualified immunity on the facts.'" *Armstrong*, 918 F.3d at 422 (quoting *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004)).

**B.      There is no jurisdiction over a qualified immunity appeal that disputes a district court's factual findings.**

A qualified immunity analysis presents two familiar issues: (1) whether the facts alleged constitute the violation of a constitutional right, and if so, (2) whether the right was clearly established at the time. *Ramirez v. Escajeda*, 921 F.3d 497, 500 (5th Cir. 2019). When this Court reviews a district court's qualified immunity determination, "[t]ypically, this determination is a decision on 'whether the federal

right allegedly infringed was clearly established.'" *Armstrong*, 918 F.3d at 422 (quoting *Behrens*, 516 U.S. at 313).

A qualified immunity appeal may also turn on whether a particular plaintiff's facts properly allege a constitutional violation. Jurisdiction is not foreclosed simply because the issue necessitates looking to the facts, so long as the party invoking immunity accepts, for purposes of the appeal, the District Court's finding of the facts as alleged in the complaint and the reasonable inferences available therefrom. In such cases, the issue is still a purely legal one—whether, on a given set of facts, the constitution was violated. *Ramirez*, 921 F.3d at 499.

Appellate jurisdiction requires acceptance by all parties of such a "given set of facts," however, and does not extend to disputes over those facts. *Ramirez*, 921 F.3d at 499. Any dispute over the facts takes the case beyond the bounds of the "purely legal" issue requirement that the Supreme Court and this Court have long imposed. At the pleadings stage, jurisdiction exists "only" for the appellate court "to decide whether the district court erred" in deciding qualified immunity "as a matter of law," based "on a given set of facts"—but *not* where the appellant fails to "tak[e] well-pleaded facts as true," "attacks the credibility of the facts pleaded," or otherwise disputes the factual allegations and reasonable inferences from the complaint, as articulated by the district court. *Ramirez*, 921 F.3d at 499, 500-01 (quoting *Rich v. Palko*, 920 F.3d 288, 293 (5th Cir. 2019)); *see also Southall v.*

*Arias*, 256 F. App'x 674, 676 (5th Cir. 2007) (dismissing appeal for lack of jurisdiction where defendant "attempt[ed] to establish that he is entitled to qualified immunity by undermining the factual allegations raised in [plaintiff's] verified complaint," because his "entire argument for qualified immunity depends on disputed factual issues that we cannot resolve at this stage").

Defendants' brief contains no substantive discussion of this jurisdictional issue. They offer no argument on the subject, and their jurisdictional statements contain only bare citations to 28 U.S.C. § 1291 and two cases, without further explication. *See* Def. Br. at 1. At this point, any argument they might seek to offer on this issue is forfeited. *See Ctr. for Biological Diversity v. United States Envtl. Prot. Agency*, 937 F.3d 533, 542 (5th Cir. 2019) ("Petitioners forfeited their" argument in support of jurisdiction "by failing to include it in their opening brief.").

> **C.    Defendants contest the District Court's acceptance of Stevenson's well-pleaded facts and inferences therefrom, depriving this Court of jurisdiction.**

Defendants' arguments related to qualified immunity do not accept the factual allegations accepted by the District Court, i.e., the facts as Stevenson has alleged them. Instead, Defendants argue that Stevenson has not alleged a clearly established Eighth Amendment violation based on the factual allegations as Defendants contend they occurred. Because the Defendants now argue they are

entitled to qualified immunity based on *their* version of the facts rather than the District Court's, this Court has no jurisdiction.

For example, Defendants dispute whether Stevenson was ever referred to an orthopedic surgeon. Def. Br. at 13. Defendants argue, "[Stevenson]'s entire claim is based on the assertion that he should have been referred to an orthopedic surgeon and one outside the prison." *Id.* at 19. But this argument is predicated on Defendants' assertion that Stevenson was never referred to an orthopedic surgeon. Contrarily, Stevenson alleged repeatedly that he *had* been referred to an orthopedic surgeon, and that Defendants *failed* to accommodate that referral. *See, e.g.*, ROA.1276 at ¶¶ 28, 30. And, the District Court so found. ROA.1333 (accepting as true that an orthopedist "recommended that the plaintiff be referred to an orthopedic surgeon for evaluation of the broken screws.").

As another example, Defendants assert that because Stevenson alleged he received various medical treatments, he cannot state a claim under the Eighth Amendment. Def. Br. at 15. This, too, contests the facts that Stevenson alleges and as the District Court found. ROA.1333 (accepting as true Stevenson's allegations that, "while the plaintiff has been issued Ted Stockings, administered blood pressure medication, and has been placed on a low salt diet, this treatment is unrelated to the swelling and pain . . . caused by the broken screws."). The complaint is rife with allegations that the medical care he received was *not*

treatment for his medical condition (the broken surgical screws), but rather was treatment for other health issues. ROA.18 at ¶ 45, ROA.1275 at ¶ 23. Stevenson alleges he was placed on a low-sodium diet to treat hypertension; prescribed TED hose to treat venous insufficiency; recommended heel stretches to address a heel spur; and was given an ankle brace to temporarily stabilize his joints. ROA.1275-76 at ¶¶ 25, 26, ROA.1276-77 at ¶¶ 32, 34. Stevenson alleges that *none* of these treatments were for the fractured surgical screws in his ankle. ROA.1275-76 at ¶¶ 25, 26, ROA.1276-77 at ¶¶ 32, 34.

In sum, for the purpose of appealing the denial of a motion to dismiss based on qualified immunity, Defendants must accept the District Court's acceptance of the well-pleaded facts in the complaint as true and reasonable inferences drawn therefrom. Because Defendants do not accept the District Court's findings, there is no purely legal question whether Stevenson has sufficiently alleged a claim of deliberate indifference for this Court to address, and this Court lacks jurisdiction over Defendants' appeal.

## II. If this Court does have jurisdiction, the District Court correctly denied Defendants' motion to dismiss on the ground that Defendants were not entitled to qualified immunity.

If this appeal is not dismissed for lack of jurisdiction, then this Court should affirm. The Magistrate Judge, after accepting Stevenson's well-pleaded allegations as true, and drawing all reasonable inferences in Stevenson's favor, determined

that Stevenson's complaint alleged facts sufficient to overcome Defendants' assertion of qualified immunity. There was no error whatsoever in the Magistrate Judge's determination or the District Court's adoption of the Magistrate's recommendation.

### A. Standards of Review

#### 1. Motion to Dismiss

This Court reviews the denial of a defendant's motion to dismiss *de novo*. *See Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (citing *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017)). The Court "must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). "To survive a motion to dismiss, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face'" *McLin*, 866 F.3d at 688. Finally, a pro se plaintiff's complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

#### 2. Qualified Immunity

This Court reviews the denial of qualified immunity at the pleadings stage *de novo*. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). This Court "must accept all well-pleaded facts as true and draw all reasonable inferences in favor of

the nonmoving party," *Kelson*, 1 F.4th at 416, to determine "whether a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." *Brown*, 519 F.3d at 236.

### 3. Deliberate Indifference

In *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752 (5th Cir. 2001), this Court laid out the analysis for a violation of the Eighth Amendment in the medical care context. It held: "A prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs." *Id.* at 754 (citing *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976)).

To succeed on a deliberate-indifference claim, "plaintiffs must show that (1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citing *Domino*, 239 F.3d at 755). Here, Stevenson must allege that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a claim under the Eighth Amendment. *Domino*, 239 F.3d at 756; *see Kelson*, 1 F.4th at 417 (applying the test from *Domino* to review of the denial of a motion to dismiss).

**B.     The District Court correctly determined that Stevenson's allegations stated a claim of deliberate indifference under the Eighth Amendment.**

Stevenson's detailed complaint alleged conduct by the Defendants that meet or exceed each of the standards for deliberate indifference established in *Domino*. Specifically, Stevenson has alleged that the Defendants refused to treat him for his broken surgical screws; ignored his complaints of severe pain; intentionally provided him incorrect treatment; and engaged in conduct that evinces a wanton disregard for his serious medical needs. The District Court correctly held that these allegations state a claim under the Eighth Amendment, thereby defeating Defendants' claim of qualified immunity. ROA.1330-38, ROA.1364.

1.   Defendants refused to treat Stevenson's broken surgical screws.

Stevenson's complaint is replete with factual allegations that Defendants outright refused to treat him for the broken surgical screws in his ankle. First, Stevenson alleged the "Defendants knew of the presence of the broken screws the entire time" that they were serving as staff physicians, and yet, "did nothing to provide access to [an] orthopedic specialist to have the screws removed or repaired."  ROA.12-14 at ¶¶ 12, 13, ROA.16 at ¶¶ 27, 28.

Second, Stevenson alleged that even after an x-ray revealed Stevenson's condition worsening, with now *two* broken screws in his ankle, "Defendants refused to provide a referral to the orthopedic clinic." ROA.17 at ¶ 37. Third,

Stevenson maintains that "absolutely no treatment has been provided for [the] broken surgical screws." ROA.19 at ¶ 53. He alleged he "has not been provided a limited duty status" and has not been provided with repair, removal, or replacement of the broken screws. ROA.19 at ¶ 53, ROA.20 at ¶ 60.

The District Court correctly determined Stevenson's allegations of Defendants' refusal to treat him stated a facially plausible claim of deliberate indifference. *See Domino*, 239 F.3d at 756 (stating that deliberate indifference is met by showing defendants refused to treat the plaintiff). This Court has previously found that allegations like Stevenson's state a claim under the Eighth Amendment, confirming the propriety of the District Court's denial of qualified immunity here. *See, e.g.*, *Thompson v. McCoy*, 365 F. App'x 601, 602-03 (5th Cir. 2010) (reversing dismissal of prisoner's complaint on qualified immunity grounds when complaint alleged that emergency medical technician refused to treat prisoner for acute asthma attack); *Carlucci v. Chapa*, 884 F.3d 534, 539 (5th Cir. 2018) (vacating district court dismissal of *pro se* plaintiff's complaint on the grounds that, accepting the facts alleged in the light most favorable to the plaintiff, he had suffered severe physical pain and was denied recommended medical treatment, which was sufficient to state a plausible claim for relief).

      2.  Defendants ignored Stevenson's complaints of pain.

Stevenson's complaint also contains numerous allegations that Defendants ignored his complaints for several years. He alleged his complaints of severe ankle pain, which Defendants knew about for over a decade was being caused by the broken screws, went ignored. Indeed, despite Stevenson's medical complaints, Stevenson alleges that Defendant Lavespere decided to alter Stevenson's work status from permanently out of field to regular duty, sentencing Stevenson to hard labor in the agricultural fields where the first screw had originally broken. ROA.16 at ¶ 26, ROA.18 at ¶ 44, ROA.1274 at ¶ 17, ROA.1275 at ¶ 20. The District Court correctly held that these allegations also stated a claim for deliberate indifference. *See, e.g.*, *Rodrigue v. Grayson*, 557 F. App'x. 341, 347 (5th Cir. 2014) (affirming finding of deliberate indifference where defendant ignored inmate complaints of abdominal pain, constipation, and vomiting, and noting that "factual findings—that [defendants] had subjective knowledge of [plaintiff's] dire condition—remove this case from the realm of negligence or gross negligence, and render inapposite cases dealing with honest but inadequate medical care.")

     3.  Defendants intentionally mistreated Stevenson's ankle injury.

Stevenson's complaint also details allegations that Defendants intentionally mistreated him. He alleged that Defendants refused to treat his ankle injury with an out-of-field duty status that would exempt him from working in the fields and exacerbate his injury. ROA.1274 at ¶16. What's more, Stevenson alleged that

Defendant Lavespere deliberately changed his duty status from out of field to regular duty despite Lavespere's knowledge that the broken screws were causing Stevenson immense pain. ROA.1276 at ¶ 28. Knowing that altering Stevenson's duty status would cause Stevenson to suffer and proceeding to do so anyway states a claim of deliberate indifference. *See, e.g.*, *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989) (allegations that prison officials "knowingly put Jackson on a work detail which they knew would significantly aggravate his serious physical ailment such a decision would constitute deliberate indifference to serious medical needs."); *see also Austin v. Johnson*, 328 F.3d 204, 209 (5th Cir. 2003) ("[C]onditions of confinement must not impose the wanton and unnecessary infliction of pain.") (citing *Jackson*).

4. Defendants' conduct evinced a wanton disregard for Stevenson's medical needs.

Finally, Stevenson's complaint provides examples of Defendants' wanton disregard for his serious medical needs. As one example, Stevenson alleged that Defendants were aware that they were not qualified to determine the proper treatment for the broken screws, yet they refused to send him to an orthopedic surgeon who could determine proper treatment. ROA.18 at ¶ 47, ROA.1276 at ¶ 31, ROA.1278 at ¶ 43, ROA.1279 at ¶¶ 45, 47. This Court has found such conduct violates the Eighth Amendment. *See, e.g.*, *Rodrigue*, 557 F. App'x at 343, 345-47 (holding the defendants' conduct rose to the level of a wanton disregard for the

plaintiff's serious needs when "despite persistent complaints of extreme abdominal pain and bilious vomiting for over a week, a prisoner was simply denied access to a medical professional competent to diagnose and treat his condition.")

As another example, Stevenson alleged Defendants never informed him of a 2006 x-ray showing a broken screw in his ankle despite being aware of the x-ray, and leaving Stevenson unaware of the cause for his agony for over a decade. ROA.1274 at ¶ 18. Defendants continued to demonstrate wanton disregard when they did not inform Stevenson of the second broken surgical screw in 2020. ROA.12 at ¶ 6, ROA.16 at ¶¶ 25, 27. In this Circuit, these allegations have been found to support a constitutional violation. *See Thompson*, 365 F. App'x at 602 (reversing dismissal of prisoner's complaint on qualified immunity grounds when complaint alleged that "a substantial risk of [asthma] attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant was exposed to the information and thus must have known about it") (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528 (5th Cir. 1999)).

## C.     Defendants violated a clearly established right.

The "clearly established" prong for qualified immunity "asks whether the detainee's right to treatment for serious medical needs was 'clearly established' such that every 'reasonable official would understand what he is doing violates that

right.'" *Kelson*, 1 F.4th at 420 (quoting *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020)). The Court does not "require a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 739 (2011). Importantly, "officials can still be on notice that their conduct violates established law even in novel factual circumstances.... [T]he salient question ... is whether the state of the law ... gave respondents fair warning that their alleged treatment ... was unconstitutional." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002); *see also Austin,* 328 F.3d at 210 ("[O]fficers need only have 'fair warning' that their conduct is unlawful.").

In ruling on Defendants' motion to dismiss on the ground that Defendants were entitled to qualified immunity, the Magistrate Judge's Report and Recommendation did not address whether the Defendants' alleged deliberate indifference was clearly established, even though Defendants raised the issue in their motion. ROA.50-70. The District Court, in adopting the Magistrate's recommendation, did not address the question either. Nevertheless, it has been clearly established for decades that Defendants' alleged conduct towards Stevenson violates the Eighth Amendment. Defendants are therefore not entitled to qualified immunity on this ground either.

Stevenson alleged that Defendants refused to treat him, ignored his complaints, intentionally mistreated him, and exhibited a wanton disregard for his serious medical needs. Such conduct has been clearly established violations of the Eighth Amendment since 1976, several decades before the events at issue in this case. *See Estelle*, 429 U.S. at 104 (holding that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment") (quoting *Gregg v. Georgia*, 428 U.S. 153,173 (1976)).

In addition, this Court's holding in *Easter v. Powell,* 467 F.3d 459 (5th Cir. 2006), demonstrates that Defendants' alleged conduct has been clearly established many years before the events in this case. In that case, Easter, an inmate, had historically suffered from serious heart problems. Easter visited the prison infirmary with severe chest pain. *Id.* at 461. The treating nurse Powell refused to treat Easter with nitroglycerin and instead checked and wrote him a prescription for blood pressure. Easter was left for hours in severe pain before being given nitroglycerin by a different medical professional. *Id*. The *Easter* court held that Easter's allegations stated a claim for deliberate indifference because "Powell refused to provide any treatment to, and ignored the complaints of, a patient suffering from severe chest pain that she knew had a history of cardiac problems." *Id.* at 464.

This case shares many similarities to *Easter*. Like Easter's heart problems, Stevenson alleged the broken screws in his ankle were well-documented since at least 2006, and which Defendants were aware of. ROA.1274-75 at ¶¶ 19-20. Like Easter's complaints to Powell, Stevenson's many complaints to Defendants were ignored. ROA.13-14 at ¶¶ 12-13, ROA.1275 at ¶ 22, ROA.1282 at ¶ 63, ROA.1285 at ¶ 84. And, like Easter being treated for blood pressure when he was in fact suffering chest pain, Stevenson he was treated for hypertension, venous insufficiency, and other injuries unrelated to his ankle injury. ROA.1275 at ¶ 23.

To be sure, the conduct Stevenson alleged Defendants engaged in is even more egregious than that alleged in *Easter*. Among other things, Stevenson alleged Defendants intentionally mistreated him when they altered his duty status to regular labor in the prison agricultural fields despite his severe injury. ROA.1282 at ¶ 62. And while Easter's complaints to Powell were found to have stated a claim for deliberate indifference after only one instance and hours of pain, Stevenson's complaints of severe pain to Defendants have been ignored on multiple occasions over a span of many *years*. ROA.12 at ¶¶ 6-9, ROA.1275 at ¶ 20. Thus, there can be no question that the conduct Stevenson complained of was a clearly established violation since *Easter*. Other cases in this Circuit also show Defendants had fair warning that their conduct violated the Eighth Amendment. *See, e.g.*, *Jackson*, 864 F.2d at 1246 (since 1976, knowingly putting an inmate "on a work detail which

they knew would significantly aggravate [inmate's] serious physical ailment" constituted deliberate indifference); *Olabisiomotosho*, 185 F.3d at 528 (since 1999, knowing about a substantial risk of inmate's asthma attacks and refusing to treat violated the Constitution); *Austin*, 328 F.3d at 210 (holding in 2003 that defendants' failure call an ambulance for almost two hours while prisoner lay unconscious and vomiting rose to the level of deliberate indifference).

III. **Defendants' motion to dismiss should also have been denied because the doctrine of qualified immunity is contrary to the original text of Section 1983.**

Assuming *arguendo* that this Court had jurisdiction and determined the Defendants were entitled to qualified immunity, there is still a reason to affirm the District Court's denial of the Defendants' motion to dismiss. And that is that there is no legal basis for the doctrine of qualified immunity. The original text of Section 1983 contained a "notwithstanding clause" that was erroneously omitted in what became our modern U.S. Code. *See* Reinert, Alexander A., Qualified Immunity's Flawed Foundation, 111 Cal. L. Rev. 201, 235-46 (2023). But the omitted clause still has the force of law—and it directly contradicts the assumption that grounds the doctrine of qualified immunity. *Id.* The entire doctrine of qualified immunity is premised on the absence of text that was actually present. This revelation shows the qualified-immunity doctrine to be "flawed—foundationally—from its inception." *Rogers v. Jarrett*, 63 F.4th 971, 979 (5th Cir. 2023) (Willett, J., concurring), *cert*

*denied* 601 U.S. 27 (2023). Accordingly, Stevenson's claims against Defendants should proceed to discovery.

### IV. This Court lacks jurisdiction to decide Defendants' non-immunity-related issues raised on appeal.

Defendants also argue on appeal that the District Court erred in not considering documents outside Stevenson's complaint when denying Defendants' motion to dismiss. Def. Br. at 21-35. This Court lacks jurisdiction to consider this issue given that the jurisdictional basis of this interlocutory appeal is to decide whether Defendants are entitled to qualified immunity. Defendants' argument regarding the District Court's decisions in reviewing the complaint is unrelated to qualified immunity and therefore cannot be appealed at this stage. *See Armstrong*, 918 F.3d at 422 ("A decision on qualified immunity can be an appealable final decision, 'but only to the extent that the appeal concerns the purely legal question whether the defendants are entitled to qualified immunity on the facts.'") (quoting *Kinney v. Weaver*, 367 F.3d at 347).

Even if this Court had jurisdiction, Defendants did not argue in their opening brief that the District Court abused its discretion when it chose not to consider documents outside the complaint. Any such argument in reply is forfeited. *See Ctr. for Biological Diversity*, 937 F.3d at 542. In any event, the District Court did not abuse its discretion in choosing not to consider documents outside the complaint. When considering a Rule 12(b)(6) motion, the district court has wide discretion on

what, if anything, it chooses to view besides the pleadings. *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007) ("When matters outside the pleading are presented with a motion to dismiss under 12(b)(6), a district court has complete discretion to either accept or exclude the evidence.").

Ordinarily, a district court's review at the pleadings stage is limited to the complaint. *Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) ("At this early pleading stage, our factual universe is bounded by the four corners of the complaint"). The district court has discretion to review documents outside the complaint in limited circumstances—only "documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). In addition, where attachments to a defendant's motion to dismiss conflict with claims in the complaint, "they are excluded because of the "presumption of truth" given to the complaint at this stage of litigation." *Foerster v. Bleess*, 2022 U.S. App. LEXIS 127, *4 (5th Cir. 2022).

As Defendants make clear in their opening brief, their attachments to their motion to dismiss were included for the purpose of challenging Stevenson's factual allegations. *See*, e.g., Def. Br. at 26-34 (comparing Stevenson's allegations to the documents attached to Defendants' motion to dismiss). Indeed, the Magistrate

Judge found the documents attached to Defendants' motion were not "central to the plaintiff's claims," for this reason. *See* ROA.1336 ("The medical records attached here are not the basis of the claim. They are evidence submitted to refute the plaintiff's claim"). The District Court correctly determined that the documents outside the complaint were not central to Stevenson's claims and properly excluded them from its analysis. The District Court was well within its discretion to do so. *See Allen v. Hays*, 812 F. Appx 185, 189 (5th Cir. 2020) ("If matters beyond [the complaint] are presented, the court has "complete discretion" to exclude them") (quoting *Isquith ex rel Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3); *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (1969) (explaining Rule 12(b) gives a district court "complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.").

## CONCLUSION

For the foregoing reasons, this Court should dismiss Defendants Lavespere and Tocé's appeal for lack of jurisdiction. If this Court determines it has jurisdiction, it should affirm the District Court's denial of Defendants Lavespere and Tocé's motion to dismiss.

RESPECTFULLY SUBMITTED,

/s/ Danielle Hamilton

Danielle Hamilton
Nathan Celestine, *Student Counsel*
Northwestern Pritzker School of Law
Federal Appellate Litigation Clinic
Bluhm Legal Clinic
375 E Chicago Ave.
Chicago, IL 60611
312.513.8576
danielle.hamilton@law.northwestern.edu

Samuel Weiss
Rights Behind Bars
416 Florida Avenue NW #26152
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellee Bobby Stevenson*

# CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2023, an electronic copy of the foregoing document was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and service was accomplished on all counsel of record by the appellate CM/ECF system.

RESPECTFULLY SUBMITTED,

/s/ Danielle Hamilton

Danielle Hamilton
Nathan Celestine, *Student Counsel*
Northwestern Pritzker School of Law
Federal Appellate Litigation Clinic
Bluhm Legal Clinic
375 E Chicago Ave.
Chicago, IL 60611
312.513.8576
danielle.hamilton@law.northwestern.edu

Samuel Weiss
Rights Behind Bars
416 Florida Avenue NW #26152
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellee Bobby Stevenson*

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,920. In preparing this certificate, I relied on the word-count tool of Microsoft Word, Office 365.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, Office 365 Edition in 14-point Times New Roman.

RESPECTFULLY SUBMITTED,

/s/ Danielle Hamilton

Danielle Hamilton
Nathan Celestine, *Student Counsel*
Northwestern Pritzker School of Law
Federal Appellate Litigation Clinic
Bluhm Legal Clinic
375 E Chicago Ave.
Chicago, IL 60611
312.513.8576
danielle.hamilton@law.northwestern.edu

Samuel Weiss
Rights Behind Bars
416 Florida Avenue NW #26152
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellee Bobby Stevenson*